UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLITON JAY-TWAN VARNADO,<br><br>Petitioner,<br><br>v.<br><br>TRENT ALLEN,<br><br>Respondent. | No. 2:19-cv-02285-TLN-CKD-P<br><br><br><br>FINDINGS & RECOMMENDATIONS |

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2014 conviction for first degree murder, attempted robbery, robbery, and assault with a firearm. Petitioner was sentenced to life without parole, plus an indeterminate term of 25 years to life, and a determinate term of 19 years, four months in state prison. Petitioner claims that (1) there was a prejudicial error in the jury instructions, (2) the trial court erred when it told the jury that the attorneys could expand upon the jury instructions, (3) defense counsel was ineffective, and (4) the record does not accurately reflect the jury's verdict on count one. (ECF No. 6.) After reviewing the record, this Court concludes that the petition should be denied.

II. Procedural History

    A jury found petitioner guilty of the first-degree murder and the attempted robbery of

1

Lafazia, the robbery of and assault with a firearm on Carter, and the robbery of and assault with a firearm on Ditaranto. (ECF No. 12-1 at 187-91; ECF No. 12-2 at 2-4.) The trial court sentenced him to life without the possibility of parole, plus 25 years to life and 19 years four months in state prison. (ECF 12-12 at 5.)

Petitioner appealed his conviction to the California Court of Appeal, and the court affirmed the conviction. (ECF Nos 12-9 to 12-12.) He then filed a petition before the California Supreme Court, which the court summarily denied. (ECF Nos. 12-13 & 12-14.)

Petitioner filed his amended federal habeas petition in December 2019. (ECF No. 6.) Respondent filed an answer on February 10, 2020. (ECF Nos. 12-13.) Petitioner did not file a traverse.

III. Facts[1]

After independently reviewing the record, this Court finds the appellate court's summary accurate and adopts it herein.[2] In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal provided the following factual summary:

**BACKGROUND**

**A**

> C. Carter posted an advertisement seeking women on Craig's List in May 2013.[] A person who identified herself as Reshay Mott responded to the advertisement. Carter found the Facebook page for Reshay Mott. The Facebook page contained photographs of Mott and her boyfriend Varnado.
>
> Mott invited Carter to meet her at an apartment in Sacramento. Carter drove to the address, pulled into a nearby church parking lot and texted his location to Mott. Mott got into Carter's car but then quickly exited, and a man took her place while another man opened Carter's driver's side door and pointed a black pistol. Carter did not see where Mott went. The man who got into Carter's car beat Carter in the head with a pistol and repeatedly yelled, "Where is it?" Carter threw his wallet at that man. The robbers fled.

---

[1] The facts are from People v. Varnado, No. C077847, 2018 WL 6521398 (Cal. Ct. App. Dec. 12, 2018), a copy of which respondent lodged as ECF No. 12-12.

[2] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing evidence).

Within an hour after the incident, Carter got a call from a blocked number. A man demanded the PIN number to his ATM card. The caller said he would come after Carter's daughter, whose information was in Carter's wallet, if Carter did not provide his PIN number. Carter gave the caller his PIN number. About 180 dollars was taken out of Carter's account. At trial, Carter identified Mott as the woman who got in his car on the night of the robbery and Varnado as one of the robbers.

### B

N. Ditaranto posted an advertisement on Craig's List in June 2013. Someone named Shay responded to the advertisement. Ditaranto and Shay arranged a meeting. Phone records for Mott's cell phone showed a message sent from Mott's cell phone giving Ditaranto directions to Mott's apartment complex.

When Ditaranto arrived at the apartment complex, Mott leaned inside his car and then Varnado opened Ditaranto's front passenger car door and got inside. Ditaranto did not see what happened to Mott after the passenger door opened. Varnado hit Ditaranto in the back of the head with the butt of a gun six to eight times, demanding that Ditaranto give him money. After ordering him to get out of the vehicle, Varnado hit Ditaranto in the back a couple of times and took Ditaranto's Samsung Galaxy S4 cell phone and the money from Ditaranto's wallet. Mott offered a Galaxy S4 cell phone for sale through her Facebook page the day after the Ditaranto robbery. Varnado sold a Samsung Galaxy S4 cell phone to Game Stop the same day. Ditaranto identified defendant and Mott as the people who robbed him.

### C

D. Lafazia posted advertisements seeking women on Craig's List in June 2013. A text message from Mott's cell phone to Lafazia's cell phone directed Lafazia to Mott's apartment complex. The last text message from Lafazia's cell phone to Mott's cell phone was sent at 12:49 a.m. on July 7. There was a 911 call at 12:59 a.m. reporting the shooting of Lafazia.

Lafazia died of a gunshot wound to his chest. Scrapings from Lafazia's left hand fingernails contained a mixture of DNA profiles. A forensic DNA expert opined Varnado was a contributor to the mixture of DNA profiles obtained from the scrapings from Lafazia's left hand. Police found a bloodied T-shirt and sweatshirt, a semiautomatic gun and a magazine at the scene. Lafazia's cell phone records showed text messages from a cell phone number associated with Mott giving directions to Mott's apartment complex. Police connected the cell phone number associated with Mott to the Carter and Ditaranto robberies.

### D

Police interviewed Mott and Varnado. Mott admitted that she committed the Carter and Ditaranto robberies. She told police

Varnado hit the victims of the first two robberies with a gun in order to take their property. With regard to Lafazia, Mott ultimately admitted the following: the plan was for her to take Lafazia's money and run; Varnado would be somewhere where he could see her and make sure she was safe. She got in Lafazia's truck, took Lafazia's money and left the truck. But Lafazia got out of the truck and grabbed Mott's hair. Varnado interceded and Mott ran away. Mott was halfway down the complex when she heard a gunshot.

During his police interview, Varnado admitted he and Mott set up and robbed people. Varnado admitted punching Carter five or six times and taking his wallet. He admitted punching Ditaranto six to seven times and taking his cell phone. He admitted the incident with Lafazia was also a robbery. He said the plan was for him to stay at the side of the building and come out and rob Lafazia when the latter exited his car. He said he used the same gun in the three robberies.

The People played a surreptitiously recorded conversation between Mott and Varnado. Varnado said the police had his sweater, shirt, gun and clip, and there was a photograph of him on Facebook in the sweater. He told Mott, "[i]t's over." He said he should have left and he could not "do 25 years."

The People also presented evidence of "kites" or jailhouse messages between Mott and Varnado in which they said they needed to get their "stories straight" and Mott described what she and/or Varnado would say about the robberies. Mott testified that some of the statements in her kites were untrue.

At trial, Mott admitted she and Varnado committed the Carter robbery. But Mott denied involvement with the Ditaranto robbery. She said Varnado's cousin committed that robbery with another woman. Mott testified that she arranged for Lafazia to meet her at her apartment complex to have sex for money, not to rob him. Her testimony about what happened with Lafazia was consistent with the narrative in one of her kites to Varnado.

Varnado likewise testified that he committed the Carter robbery. He said he acted as a lookout while his cousin committed the Ditaranto robbery. As Mott instructed in one of her kites, Varnado testified he did not have a gun in either robbery. Varnado's trial account of the Lafazia shooting was consistent with the narrative in Mott's kites.

E

The jury convicted Mott of the first degree murder of Lafazia (§ 187, subd. (a) -- count one), attempted robbery of Lafazia (§§ 211, 664 -- count two), robbery of Carter and Ditaranto (§ 211 -- counts three and five), and assault with a firearm upon Carter and Ditaranto (§ 245, subd. (a)(2) -- counts four and six). The jury found true the robbery-murder special-circumstance allegation in count one. (§ 190.2, subd. (a)(17).)

The jury convicted Varnado of the first degree murder of Lafazia (count one), attempted robbery of Lafazia (count two), robbery of

4

> Carter and Ditaranto (counts three and five), and assault with a firearm upon Carter and Ditaranto (counts four and six). The jury found true allegations that Varnado personally and intentionally discharged a firearm which caused Lafazia's death (§ 12022.53, subd. (d) ), personally and intentionally discharged a firearm (§ 12022.53, subd. (c) ) and personally used a firearm (§§ 12022.5, subd. (a), 12022.53, subd. (b) ). The jury also found true the robbery-murder special-circumstance allegation in count one. The jury also found true allegations that Varnado personally used a firearm in the commission of the robberies and assaults of Carter and Ditaranto.
>
> The trial court sentenced Varnado to life without the possibility of parole, plus 25 years to life, plus 19 years and 4 months. The trial court sentenced Mott to life without the possibility of parole, plus 6 years.

Varnado, 2018 WL 6521398, at *1-3.

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

5

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (internal citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The court looks to the last reasoned state court decision as the basis for the state court's judgment. Stanley v. Cullen, 633 F.3d 852, 859-60 (9th Cir. 2011). The California Court of Appeal's decision on direct appeal is the last reasoned state court decision with respect to petitioner's claims. (ECF No. 12-12.) Petitioner bears the "burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

V. Petitioner's Claims

   A. Claim One: Jury Instruction Error

Petitioner claims that the "court gave an abbreviated and misleading version of CALCRIM No. 373 [concerning] co-perpetrators not on trial, which negated a substantial portion of [his] defense." (ECF No. 6 at 4.) Specifically, although there was evidence that his cousin, Marwon Bartley, was one of the perpetrators of the offenses charged in counts four and six, the trial court instructed the jury not to speculate about anyone else's participation other than the two

charged defendants. (Id.; see also ECF No. 12-8.) Respondent argues that the state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law and was not based on unreasonable determination of the facts. (ECF No. 13 at 15-19.)

On the merits, this Court looks to the last reasoned state court decision in applying the 28 U.S.C. § 2254(d) standard. Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018); see also Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (establishing the "look through" doctrine in federal habeas cases). In the last reasoned opinion, the state appellate court considered and rejected petitioner's claim on the merits.

> Varnado and Mott contend the trial court gave a misleading version of CALCRIM No. 373 [other perpetrator] which negated their defense that someone else committed the crimes.
>
> In closing argument, Varnado's trial counsel conceded that Varnado participated in the Carter and Ditaranto robberies, but noted that two men were involved in those robberies and yet only Varnado was on trial. Varnado's counsel said, "you probably wonder why is there -- the other fellow not here in this case? The police certainly knew about him because they put his picture in a lineup, didn't they?" (The other individual was not charged in this case and did not testify at trial.) Varnado's counsel argued, based on the photographic lineups, that Varnado and the other individual looked alike and the witnesses could have been confused about which man was actually assaulting them. Varnado's counsel asserted the jury would have to be convinced beyond a reasonable doubt that Varnado, and not the other individual, was the man who assaulted the victims with a gun and without the other individual at trial, the jury could not be so convinced.
>
> The prosecutor responded in closing argument that the other individual's guilt was not before the jury and the jury must focus on whether Mott and Varnado were guilty of the crimes charged. The trial court then interjected, "I'll add to that because I did not include an instruction on that. I will instruct you that you're not to speculate about anybody's participation other than the two defendants who are charged."[3] The prosecutor then continued with closing argument.
>
> [N.3 In contrast with the trial judge's comment, CALCRIM No. 373 provides, "The evidence shows that (another person/other persons) may have been involved in the commission of the crime[s] charged against the defendant. There may be many reasons why someone who appears to have been involved might not be a codefendant in this particular trial. You must not speculate about whether (that other person has/those other persons have) been or will be prosecuted. Your duty is to decide whether the defendant on trial here committed the crime[s] charged." The trial court did not instruct

7

> the jury with CALCRIM No. 373.]
>
> Assuming the trial court's instruction is erroneous, we will not set aside the judgment unless the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) In light of all the instructions given and evidence presented, we conclude reversal is not required. The trial court instructed the jury that the People must prove the defendant did the acts charged. It told the jury the People must prove beyond a reasonable doubt that it was the defendant who committed the crimes and if the People did not meet that burden, the jury must find the defendant not guilty. The trial court further instructed on the elements of the charged offenses. We presume the jury understood and followed the trial court's instructions. (*People v. Gonzalez* (2018) 5 Cal.5th 186, 202.) Moreover, the evidence of defendants' guilt in the Carter and Ditaranto crimes is overwhelming. That evidence included admissions from Mott and Varnado that Varnado used a gun and hit Carter and Ditaranto during the robberies.

Varnado, 2018 WL 6521398, at *3-4.

Federal habeas courts do not grant relief merely because the jury instruction was deficient compared to a California model instruction. Estelle, 502 U.S. at 72. Instead, habeas relief is only available if "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (In non-capital cases, "we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief."). The instruction cannot merely be "undesirable, erroneous, or even 'universally condemned.'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). It must violate a constitutional right. Id. "[T]he defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). The Supreme Court has cautioned that there are few infractions that violate fundamental fairness. Id. at 72-73; see, e.g., Sarausad, 555 U.S. at 191-92; Middleton v. McNeil, 541 U.S. 433, 437 (2004) (per curiam)

8

1  ("Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the
2  level of a due process violation"); Jones v. United States, 527 U.S. 373, 390-92 (1999); Gilmore,
3  508 U.S. at 344.
4      Here, the state court's rejection of petitioner's jury instruction claim was not contrary to or
5  an unreasonable application of clearly established federal law.  The state court assumed the jury
6  instruction was erroneous and reasonably concluded that the instruction did not infect the trial
7  with unfairness as to constitute a violation of due process.  Varnado, 2018 WL 6521398, at *4.
8  The trial court instructed the jury on the elements of the charged offenses and that the state must
9  prove that petitioner committed the charged offenses beyond a reasonable doubt.  Varnado, 2018
10 WL 6521398, at *4; see also  ECF No. 12-1 at 272, 276, 279, 287-301.  Although defense counsel
11 argued that the jury had to be convinced beyond a reasonable doubt that petitioner, not Marwon,
12 committed the assault, the prosecutor urged the jury not to consider Marwon's guilt.  Varnado,
13 2018 WL 6521398, at *3-4; (ECF No. 16-1 at 14-15; id. at 24-25 ("Marwon Bartley's guilt or
14 whatever it happens to be relative to this robbery is not here today for your consideration…your
15 job here to do is to make determinations about Ms. Mott and Mr. Varnado."))  The trial court then
16 instructed the jury "not to speculate about anybody's participation other than the two defendants
17 who are charged." (ECF No. 16-1 at 25.)  A jury is presumed to follow the trial court's
18 instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Petitioner has not provided any
19 evidence to rebut this presumption.
20     Even if the jury instruction was erroneous, habeas petitioners "are not entitled to habeas
21 relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht v.
22 Abrahamson, 507 U.S. 619, 637 (1993); see also Brown v. Davenport, No. 20-826, 2022 WL
23 1177498, at *3, 9 (U.S. Apr. 21, 2022).  This requires showing that there is more than a
24 reasonable probability that the error had a substantial and injurious effect on the jury's verdict.
25 Brecht, 507 U.S. at 637; see also Davis v. Ayala, 576 U.S. 257, 268 (2015).  Petitioner cannot
26 meet this standard.  The trial record contains sufficient evidence of petitioner's guilt, including
27 defense counsel's concession that Varnado was involved in the robberies, and Varnado's
28 testimony that he used the gun.  (ECF No. 16-1 at 14, 18; ECF No. 12-2 at 71; ECF No. 12-7 at

161-65; see also ECF No. 12-9 at 17 n.7.) This Court recommends denying habeas relief on this claim.

B. Claim Two: Court's Comment Regarding Closing Arguments

Next, petitioner claims that the trial court erred in giving an inconsistent and misleading instruction that one of the main purposes of counsels' arguments is to expand upon the jury instructions. (ECF No. 6 at 4; see also ECF No. 12-9 at 23 (arguing that the "judge's ad lib introduction to counsel's arguments was inconsistent with [CALCRIM No. 200].")) Respondent argues that this claim is not cognizable or should be denied on the merits. (ECF No. 13 at 19-22.)

In the last reasoned opinion, the state appellate court denied petitioner's claim that the jury likely misunderstood the challenged instruction.

> Varnado and Mott next claim the trial court gave an inconsistent and misleading instruction about the purpose of closing argument.
>
> After instructing the jury, but before closing arguments, the judge said to the jury: "The lawyers, in their argument, their job is to expand on these instructions and to make them clear to you. That's going to be one of the main purposes of their argument." There was no objection to the trial judge's statement, but Varnado and Mott now contend the statement conflicted with the CALRIM No. 200 instruction that the jury must follow the judge's explanation of the law.
>
> Even if defendants did not forfeit their appellate claim by failing to object below, we conclude the claim lacks merit. We conclude the trial court used the word "expand" to mean that counsel would explain the trial court's instructions, not deviate from them. The trial court said the lawyers would make the instructions "clear" to the jurors. Counsel may certainly explain the relevant law in closing argument. (*People v. Hawthorne* (1992) 4 Cal.4th 43, 60; 21 Cal.Jur.3d (2009) Criminal Law: Trial § 124; see *People v. Kelly* (1992) 1 Cal.4th 495, 526; Levenson, Cal. Practice Guide: Cal. Criminal Procedure (The Rutter Group 2016) ¶ 23:36.) Moreover, the trial court told the jury, consistent with CALCRIM No. 200, that the court would instruct the jury on the law applicable to the case and the jury must follow the law as the trial court explained it. The trial court further admonished that if the jury believed the attorney's comments on the law conflicted with the trial court's instructions, the jury must follow the trial court's instructions.
>
> It is not reasonably likely the jury understood the challenged statement by the trial court in a manner inconsistent with CALCRIM No. 200. In any event, defendants do not claim the prosecutor misstated the law.

Varnado, 2018 WL 6521398, at *4-5.

Like petitioner's first claim, habeas relief is not warranted merely because a jury instruction was "undesirable, erroneous, or even 'universally condemned.'" Donnelly, 416 U.S. at 643. Instead, the jury instruction must have infected the entire trial, resulting in a conviction that violates due process. Estelle, 502 U.S. at 72. After examining the trial record, this Court concludes that state court's finding was not contrary to or an unreasonable application of clearly established federal law. Here, the trial court told the jury that "[t]he lawyers, in their argument, their job is to expand on these instructions and to make them clear to you. That's going to be one of the main purposes of their argument." (ECF No. 12-7 at 270.) The state appellate court held that "the trial court used the word 'expand' to mean that counsel would explain the trial court's instructions, not deviate from them" and that "[i]t is not reasonably likely the jury understood the challenged statement by the trial court in a manner inconsistent with CALCRIM No. 200." Varnado, 2018 WL 6521398, at *4-5. In the context of the entire jury instructions, this conclusion was reasonable. As the state court explained, the trial court provided CALCRIM No. 200 instructing that "[y]ou must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (ECF No. 12-1 at 275.) The judge also noted that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." (Id. at 276.) A jury is presumed to follow the instructions. Even if this Court assumes the state appellate court's conclusion was wrong, it was not unreasonable, and that is the kind of decision AEDPA protects on habeas review. See Brown v. Payton, 544 U.S. 133, 143 (2005). This Court also recommends denying petitioner's request for habeas relief on claim two.

  C. Claim Three: Ineffective Assistance of Counsel

Petitioner embeds two arguments in his third claim. First, he argues that the trial court "erroneously imposed the upper term on Count 3 based on a conclusory and unexplained finding that [petitioner had] committed perjury." Second, he claims that "counsel's failure to object [to the trial court's finding] manifested prejudicial ineffective assistance of counsel." (ECF No. 6 at 5; see also ECF 12-9 at 28-32.)

In the last reasoned opinion, the state appellate court evaluated and resolved this claim as follows:

> Varnado and Mott also contend the trial court erred by not making on-the-record findings encompassing all the elements of perjury when it imposed the upper term on count three.
>
> A trial court may enhance a defendant's sentence upon finding the defendant committed perjury at trial. (*People v. Howard* (1993) 17 Cal.App.4th 999, 1002 (*Howard* ).) "[I]f a defendant objects to a sentence enhancement resulting from [his or] her trial testimony, a ... court must review the evidence and make independent findings necessary to establish ... [perjury]. [Citations.] When doing so, it is preferable for a ... court to address each element of the alleged perjury in a separate and clear finding. The ... court's determination that enhancement is required is sufficient, however, if ... the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." (*United States v. Dunnigan* (1993) 507 U.S. 87, 95 [122 L.Ed.2d 445, 454].)
>
> California authority states that when imposing an aggravated sentence on the ground the defendant committed perjury at trial, the sentencing court must make on-the-record findings as to all the elements of a perjury violation. (*Howard, supra,* 17 Cal.App.4th at p. 1001.) Those elements are as follows: a willful statement, under oath, of any material matter which the witness knows to be false. (*Id.* at p. 1004.)
>
> Here, the trial court imposed the upper term of five years on the count three charge of robbery of Carter against Varnado and Mott in part because it found Varnado and Mott committed perjury at trial. The trial court said Varnado and Mott lied on the stand. In particular, it said the testimony that force was used against Lafazia because he resisted was clearly not true. The trial court said Carter and Ditaranto testified they were pistol-whipped by the male robber after Mott contacted them, and it was clearly not true that a wound to Lafazia's head came about because Varnado saw Lafazia detaining Mott. The trial court said it was clear that Lafazia was pistol-whipped just like Carter and Ditaranto were but Lafazia did not give up like Carter and Ditaranto did. Defendants did not object to the trial court's statement of reasons at the sentencing hearing. But once again, even if defendants did not forfeit their appellate claim by failing to object below, we conclude the claim lacks merit.
>
> The trial court made the required findings. The trial court found Varnado and Mott lied under oath about a material fact which they knew was false, i.e., claiming that Varnado assaulted Lafazia because Lafazia detained Mott. The trial court based its sentencing choice on defendants' testimony compared to the evidence related to the prior robberies, and not simply because defendants took the stand and were found guilty, which was the concern in *Howard*. (*Howard, supra,* 17 Cal.App.4th at p. 1004.) Because we find defendants' claim fails on the merits, we need not consider their ineffective assistance of

12

counsel claim.

Varnado, 2018 WL 6521398, at *5.

As to petitioner's argument that the trial court failed to make the required findings for perjury to impose an upper limit on count three, this claim is not cognizable on federal habeas review. This issue is a matter of state law. See Estelle, 502 U.S. at 67-68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see also Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005). Errors of state law do not warrant federal habeas relief. See Estelle, 502 U.S. at 67-68; Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995).

As to petitioner's second argument—that his counsel was ineffective for failing to object to the trial court's findings—petitioner must show that (1) his counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). For the deficiency prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). For the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations omitted); see also Landrigan, 550 U.S. at 473. When § 2254(d) applies, the "question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

In this case, there is no reasoned state court opinion denying petitioner's ineffective assistance of counsel claim. Therefore, this court must conduct an independent review of the record to determine what rationale could support the denial of relief by the state court and whether such rationale was an objectively reasonable application of federal law. See Richter, 562

U.S. at 102; Cullen v. Pinholster, 563 U.S. 170 (2011); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Applying this standard, this court concludes that the state court could have reasonably rejected petitioner's claim for two reasons. First, the state appellate court reasonably found that the trial judge made the required findings, concluding that both petitioner and his codefendant lied under oath about a material fact which they knew was false. Varnado, 2018 WL 6521398, at *5; see also ECF No. 16-1 at 56. Having satisfied the required perjury standard, it would have been futile for defense counsel to object to the trial court's finding. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (stating that "the failure to take futile action can never be deficient performance"). Second, the perjury finding was not the trial court's only basis for imposing the upper term. The trial judge also explained that he imposed the sentence because petitioner "was on wardship at the time of the commission of the offense." (ECF No. 16-1 at 56.) Petitioner does not challenge this basis. This Court also recommends denying relief on this claim.

### D. Claim Four: Correction to Clerk's Minutes

Lastly, petitioner claims the trial court's "minutes should be corrected to accurately reflect the jury's verdict on Count One." (ECF No. 6 at 5.) On direct appeal, the state agreed that the minutes were incorrect. The state appellate court remedied the issue as follows:

> Varnado argues the trial court clerk's minutes inaccurately state that in addition to finding him guilty of first degree murder on count one, the jury also returned verdicts convicting him of lesser included offenses. The Attorney General agrees that the minutes are incorrect in this regard. We agree with the parties. Although Mott did not join in this part of Varnado's appellate opening brief, the same error was made as to Mott. We will direct the trial court to correct the clerk's minutes for October 2, 2014, to accurately reflect the jury's verdicts as to Varnado and Mott on count one.

Varnado, 2018 WL 6521398, at *6. Because petitioner has already obtained his requested remedy, this claim is moot.

### VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

14

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 15, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

20/jay2285.157.hab